UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

JAMES WATSON

      Plaintiff,
v.

WYNWOOD HOSPITALITY HOLDINGS, LLC.,
d/b/a Brooklyn Chop House.

      Defendant.
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff, James Watson ("Plaintiff") hereby sues Defendant, Wynwood Hospitality Holdings LLC, d/b/a Brooklyn Chop House ("Defendant"), for Injunctive Relief, attorney's fees, litigation expenses and costs pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36, *et seq*.

    1.    Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

    2.    Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See also* 28 U.S.C. § 2201 and § 2202.

    3.    Plaintiff is a resident of the state of Florida, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA, and the ADA Amendments Act of 2008, ("AADG") 42 U.S.C. §12101, and the 28 C.F.R. §36.105(b)(2).

    4.    Plaintiff is legally blind, and substantially limited in performing one or more major

life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles. As such, is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, et seq., and 42 U.S.C. §3602(h).

5. Plaintiff uses the internet to help him navigate a world of goods, products and services like the sighted. The internet and websites provide him with a window into the world that he would not otherwise have. He brings this action against Defendant for offering and maintaining a website that is not fully accessible and independently usable by visually impaired consumers. Plaintiff utilizes the JAWS Screen Reader software, which is one of the most popular reader Screen Reader Software ("SRS") utilized worldwide to read computer materials and comprehend the website information which is specifically designed for persons who are blind or have low vision. Due to his disability, Plaintiff is unable to read computer materials and/or access the internet and websites for information without the assistance of appropriate and available auxiliary aids, and screen reader software specially designed for the visually impaired.

6. The Screen reader software translates the visual internet into an auditory equivalent. at a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link

says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at *6-7 (E.D.N.Y. Dec. 21, 2017).

7. Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting his civil rights. As such, he monitors websites to ensure and determine whether places of public accommodation and/or their websites are in compliance with the ADA.

8. Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. The place of public accommodation that the Defendant owns, operates, or leases is located in Miami-Dade County.

9. Defendant, Wynwood Hospitality Holdings, LLC, is a Florida limited liability company doing business as Brooklyn Chop House, which owns, operates, and/or maintains the restaurant known as "Brooklyn Chop House Steakhouse Miami," located on the 7th Floor of the Moxy Hotel in Wynwood, at 255 NW 25th Street, Miami, Florida 33127, and open to the public. As such, a place of public accommodation subject to the requirements of Title III of the Americans with Disabilities Act ("ADA") and its implementing regulations, as defined by 42 U.S.C. §§ 12181(7), 12182, and 28 C.F.R. § 36.104. Defendant's business and services are also offered and made available to the public through its website.

10. As the owner, operator, and/or controller of a restaurant open to the public, Defendant is a private entity that owns and/or operates "a restaurant, bar, or other establishment serving food or drink," and is therefore a place of public accommodation within the meaning of

Title III of the ADA, 42 U.S.C. § 12181(7)(B), and 28 C.F.R. § 36.104(2).

11. Because Defendant operates a restaurant open to the public, each of its physical locations constitutes a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulations, including 42 U.S.C. §§ 12181(7)(B), 12182, and 28 C.F.R. § 36.104. Defendant also promotes and offers its business, services, and merchandise to the public through its website, which is integrated with and serves as an extension of Defendant's physical place of public accommodation.

12. Since the effective date of the ADA, Defendant has constructed, caused to be constructed, and/or become a beneficiary of the website: https://www.brooklynchophouse.com (the "website"). Defendant is the owner, operator, lessor, and/or lessee of the website, which operates in conjunction with and as a complementary and supplemental extension of Defendant's restaurant location. The website provides the public with information regarding the goods, services, accommodations, privileges, benefits, and facilities available to patrons at Defendant's physical locations, including the "Brooklyn Chop House Steakhouse Miami". Defendant also offers and sells services and merchandise to the public through the website, which functions as a point of sale for goods and services available in, from, and through Defendant's restaurant location. Upon information and belief, Defendant regularly updates, maintains, and derives substantial benefit from the operation of the website in connection with its brick-and-mortar business.

13. The website is offered as a means for the public to become familiar with "Brooklyn Chop House", including its menu selections, hours of operation, locations, and other information Defendant seeks to communicate to the public. Through the website, the public can make reservations for dining at the restaurant, obtain information regarding catering and private event services, and contact the restaurant directly to inquire about its services online. The website also

allows users to shop for exclusive merchandise and gifts through the Brooklyn Chop House online store and includes links to Brooklyn Chop House's social-media platforms for additional information and engagement. By offering these features, which enable the public to access information, interact with the business, and make reservations in connection with visiting the physical restaurant, the website functions as an integral component of the goods and services offered by Defendant and is therefore subject to the requirements of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181(7)(B), and its implementing regulations, including 28 C.F.R. § 36.104(2).

14. The website is an extension of Defendant's place of public accommodation. Through the website, Defendant extends its public accommodation into individuals' homes, portable devices, and personal computers. The website constitutes a service, facility, privilege, advantage, benefit, and accommodation of Defendant's place of public accommodation, as it provides essential information about the restaurant, including menu selections, hours of operation, location, reservation capabilities, catering and private event services, and the ability for users to contact the restaurant directly online. The website also includes links to Defendant's social-media platforms to provide additional updates and information.

15. Defendant's website provides access to the benefits of Defendant's physical restaurant, and Plaintiff was denied those benefits when she could not access Defendant's website. Accordingly, the website is integrated with, and has a sufficient nexus to, Defendant's brick-and-mortar location. Therefore, it is governed by the following provisions:

    a. 42 U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person

who owns, leases (or leases to), or operates a place of public accommodation."

      b.      42 U.S.C. Section 12182(b)(1)(A)(i) provides: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity[.]"

      c.      42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]"

      d.      42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others[.]"

      e.      42 U.S.C. Section 12182(b)(1)(B) provides: "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual."

      f.      42 U.S.C. Section 12182(b)(1)(C) provides: "Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an

individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different."

        g.      42 U.S.C. Section 12182(b)(2)(ii) describes as discrimination: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"

        h.      42 U.S.C. Section 12182(b)(2)(iii) describes as discrimination: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]'

16.    As the owner, operator, and/or beneficiary of the subject website, Defendant is required to comply with the ADA and the provisions cited above. This includes an obligation to create and maintain a website that is accessible to and usable by visually impaired people so that they can enjoy full and equal access to the website and the content therein, including the ability to make a reservation, shop in the online store and contact the restaurant through the website.

17.    Since the website is open to the public through the internet, by this nexus the website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar location that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and

enjoyment of the goods, services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical locations. As such, Defendant has subjected itself and the website to the requirements of the ADA.

18. Plaintiff attempted to access and/or utilize Defendant's website to test for accessibility, and educate himself as to "Brooklyn Chop House" hours of operation, location, and menu selection, but was unable to, and he is still unable to enjoy full and equal access to the website and/or understand the content therein because several portions of the website do not interface with the JAWS Screen Reader software. Features of the website that are inaccessible include, but are not limited to, the following (citing the WCAG 2.1 Level A and AA Guidelines):

   i. Guideline 1.3.1 – Info and Relationships. The 'Start Time' and 'End Time' on the 'Event Request' page cannot be adjusted as expected. When the user tabs to either of these fields, a list of time options is automatically expanded as the screen reader announces, "Start/end time edit selected (currently selected time)." Pressing the down-arrow key then visibly moves focus through the time options in the expanded list, but the screen reader only announces the same, currently selected time with each arrow key press. This incorrectly suggests to the user that there are no other time options available for selection. However, if the enter key is pressed at any point, the time option in focus when it was pressed is then announced, followed by the word "unselected." This causes further confusion as to what happened or whether a new time option was actually selected. Overall, this is a very confusing experience which may prevent users from being able to successfully select a start time or end time for the event.

   ii. Guideline 2.1.1 – Keyboard. The date picker is not accessible on the 'Event Request' page. When tab focus moves to the 'Event Date' field, the date picker is automatically displayed, but it is not accessible with the tab key or arrow keys. Pressing the tab key closes the picker and moves focus to the 'Start Time' field instead. Alternatively, pressing the down-arrow key results in the announcement of the currently selected date followed by the word "unselected." This conflicting announcement creates confusion about whether the date is currently selected. *Note: The 'Enable Keyboard Navigation' button was activated on the accessibility menu. This widget was activated and present on all pages except the 'Event Request' page.

   iii. Guideline 2.1.1 – Keyboard (2). Size options are not accessible for merchandise items on this site. When the 'Size' button comes into focus, it is announced only as "clickable choose an option," which does not accurately convey its purpose. Then, when selected, a list of size options is displayed, but the list is not accessible with the tab key or arrow keys. Pressing the tab key moves focus to the underlying 'Quantity' spin box, and pressing

the down-arrow key similarly moves focus to the underlying 'Quantity' heading. The list cannot be navigated to with the keyboard, so screen reader users cannot select a size for or purchase the product.

iv. Guideline 2.4.3. Focus Order. When the 'Reservations' link is selected in the navigation region, a 'Reservations' pop-up is displayed, but it is not announced or given focus. Instead, as shown in the screen capture, tab focus resumes on the underlying page after the pop-up appears. The user must tab through the remaining underlying page content before the pop-up comes into focus, which takes 44 tab key presses.

v. Guideline 2.4.3. Focus Order (2). Error notifications are not announced and invalid fields are not accessible on the 'Reservations' pop-up. For example, as shown in the screen capture, if the 'Find a Table' button is selected before a reservation date is added, error messages are displayed above and below the button, but neither is announced. Then, with the next tab key presses, focus returns to the pop-up's 'Close' button and then unexpectedly exits the pop-up, forcing users to tab through all underlying page content again before it comes back into focus. As a result, screen reader users are not notified when errors occur and then cannot navigate to the invalid fields afterward.

vi. Guideline 2.4.3. Focus Order (3). The menu category buttons are not accessible on the 'Menu' page. These clickable buttons are skipped over when tabbing from the map to the first visible menu graphic. Without access to these buttons, users cannot visibly display the 'Cocktails' or 'Wine List' menus. *Note: With tab or arrow key navigation, the graphics for the visible and hidden menus are still announced, but as noted in Issue 1.4.5, none of the content visible on the images is announced.

vii. Guideline 2.4.3. Focus Order (4). The cart is not accessible as expected on the online ordering page. When a menu item is successfully added to the cart, verbal confirmation is provided of the add and the cart quantity updates on the 'View Cart' button that overlays the bottom of the page. However, after the item is added, focus returns to the same menu item on the main page, and the user must then tab through all remaining page content before the 'View Cart' button comes into focus. On this test, it took approximately 140 tab key presses to reach the 'View Cart' button after the item was added to the cart.

viii. Guideline 3.3.1 – Error Identification. Error notifications are not announced on the 'Catering Inquiry' page. As shown in the screen capture, if the 'Submit' button is selected before the required fields are completed, red error messages are displayed on the page, but nothing is announced by the screen reader. Then, with the next tab key press, focus moves into the footer. Users are never notified when errors occur, and to access the visible error messages, users would have to navigate backwards up the page with the up-arrow key, which is not the expected behavior.

ix. Guideline 4.1.2 - Name, Role, Value. 'Quantity' buttons are not labeled, and there is no verbal notification given when quantity adjustments are made with them. For example, both the 'increase quantity' and 'decrease quantity' buttons are announced as "button collapsed opens dialog," which provides no meaningful context. When either button is

    selected, the quantity visually updates on the pop-up, but nothing is announced by the screen reader to confirm this. As a result, screen reader users hear no labels for the buttons, are incorrectly informed that the buttons open dialogs, and then receive no verbal notification of the changes that occur when they are selected.

    x.    Guideline 1.4.5 – Images of Text. Menus are not accessible. Both tab and arrow key navigation can be used to move focus to the menu images on the 'Menu' page, but none of the content visible on the images is announced or navigable. Instead, only variations of "graphic menu" are announced when the images receive focus. There is no accessible version of the menus elsewhere on the site.

    xi.    Guideline 1.4.5 – Images of Text (2). The catering menu is not accessible. As shown in the screen capture, both tab and arrow key navigation can be used to move focus to the 'previous slide' and 'next slide' buttons for the menu image carousel, but none of the menu images themselves come into focus. With arrow key navigation, after the 'previous slide' and 'next slide' buttons are announced, users hear "slide 1 of 6 graphic TQS catering menu 1," and then focus moves into the footer. None of the menu content is announced or available elsewhere on the site.

    xii.    Guideline 1.4.5 – Images of Text (3). Event menus are not accessible. As shown in the screen capture, both tab and arrow key navigation can be used to move focus to the 'previous slide' and 'next slide' buttons for the menu image carousel, but none of the menu images themselves come into focus. With arrow key navigation, focus moves from the 'Event Menu' heading to the 'previous slide' and 'next slide' buttons and then to the 'Event Spaces' heading below. None of the menu content is announced or navigable, nor is it available elsewhere on the site.

    19.    The fact that a portion of the WCAG 2.1 Level A and AA Guideline violations may relate to various third-party vendor platforms does not absolve Defendant of culpability. Because restaurants are places of public accommodation, their operators are subject to the requirements of Title III as well. 42 U.S.C. § 12181(7)(b). Those requirements include a prohibition against subjecting patrons with disabilities to discrimination "through contractual, licensing, or other arrangements," such as use of third-party vendors' inaccessible platforms for making reservations. 42 U.S.C. § 12182(b)(1)(A); *See Kohler v Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264-66 (9th Cir. 2015) (Pre-existing obligations under Title III of the ADA may not be avoided through contractual arrangements, and those obligations remain even where compliance is under control of another party); *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, *4 (C.D. Cal. January 24, 2018)

(restaurant operators are liable for website and mobile app accessibility where there is a nexus to the restaurants themselves).

20. Plaintiff continues to attempt to use the website and/or plans to continue to attempt to use the website in the near future, and in the alternative, Plaintiff intends to monitor the website, as a tester, to determine whether it has been updated to interact properly with screen reader software.

21. That Plaintiff could not communicate with or within the website left him feeling excluded, frustrated, and humiliated, and gave him a sense of isolation and segregation, as he is unable to participate in the same browsing, shopping experience, and access to the same information, sales, and services, as provided at the website and in the physical location as the non-visually disabled public.

22. As more specifically set forth above, Defendant has violated the above provisions of the ADA by failing to interface its website with software used by visually impaired individuals. Thus, Defendant has violated the following provisions either directly or through contractual, licensing or other arrangements. Defendant's violations have resulted in Defendant denying Plaintiff effective communication on the basis of her disability in accordance with 28 C.F.R. Section 36.303 *et seq*.

    a. by depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation (42 U.S.C. § 12182(a));

    b. in the denial of providing Plaintiff the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

   c. in failing to allow Plaintiff to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

   d. by providing Plaintiff a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals (unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others) (42 U.S.C. § 12182(b)(1)(A)(iii));

   e. by failing to afford Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to the needs of the disabled individual (42 U.S.C. § 12182(b)(1)(B));

   f. notwithstanding the existence of separate or different programs or activities provided in accordance with this section, by denying Plaintiff the opportunity to participate in such programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

   g. by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities (unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations) (42 U.S.C. § 12182(b)(2)(ii)); and,

   h. by a failure to take such steps as necessary to ensure that disabled individuals are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege,

advantage, or accommodation being offered or would result in an undue burden) (42 U.S.C. § 12182(b)(2)(iii)).

23. As a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the website due to his blindness and the website's access barriers. Thus, Plaintiff as well as others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

24. As the result of the barriers to communication which are present within the website and by continuing to operate and/or benefit from the website with such barriers, Defendant has contributed to Plaintiff's frustration, humiliation, sense of isolation and segregation and has deprived Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the public.

25. By encountering the discriminatory conditions at Defendant's website and knowing that it would be a futile gesture to attempt to use the website unless he is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the public and is deterred and discouraged from doing so. By maintaining a website with violations, Defendant deprives Plaintiff the equality of opportunity offered to the public.

26. Plaintiff has suffered (and will continue to suffer) direct and indirect injury as a result of Defendant's violations until Defendant is compelled to comply with the ADA and conform the website to WCAG 2.1 Level A and AA Guidelines.

27. Plaintiff has a realistic, credible, existing and continuing threat of discrimination from Defendant's non-compliance with the ADA with respect to this website as described above.

Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by Defendant. Plaintiff desires to access the website to avail himself of the benefits, advantages, goods and services therein, and/or to assure himself that this website has complied with the ADA so that he and others similarly situated will have full and equal enjoyment of the website without fear of discrimination.

28. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant under 42 U.S.C. § 12205 and 28 CFR 36.505.

29. Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

30. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require Defendant to alter its website to make it readily accessible to and usable by Plaintiff and other persons with vision impairment.

**WHEREFORE,** Plaintiff, James Watson demands judgment against Defendant, Wynwood Hospitality Holdings LLC, d/b/a Brooklyn Chop House, and requests the following injunctive and declaratory relief:

a. The Court issue a Declaratory Judgment that determines that the Defendant's website at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

b. The Court issue a Declaratory Judgment that determines that Defendant's website is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

c. The Court issue a Declaratory Judgment that Defendant has violated the ADA by failing to monitor and maintain its website to ensure that it is readily accessible to and usable

by persons with vision impairment;

d. That this Court issue an Order directing Defendant to alter its website to make it accessible to, and useable by, individuals with disabilities to the full extent required by Title III of the ADA;

e. That this Court enter an Order directing Defendant to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time so as to allow Defendant to undertake and complete corrective procedures;

f. That this Court enter an Order directing Defendant to continually update and maintain its website to ensure that it remains fully accessible to and usable by visually impaired individuals;

g. An award of attorney's fees, costs and litigation expenses under 42 U.S.C. § 12205; and,

h. Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted this January 20, 2026.

By: */s/ J. Courtney Cunningham*
Juan Courtney Cunningham, Esq.
FBN: 628166
**J. COURTNEY CUNNINGHAM, PLLC**
8950 SW 74th Court, Suite 220,
Miami, Florida 33156
T: 305-351-2014
cc@cunninghampllc.com
legal@cunninghampllc.com

*Counsel for Plaintiff*